# THE PEOPLE *v.* TELLER.

*(In the Superior Court of Denver, June Term, 1883—Citation for Contempt.)*

1. CONTEMPT—SCANDALOUS MATTER IN PLEADING. The introduction of scandalous matter in a pleading is in violation and contempt of those well settled rules of propriety and decorum which constitute the chief distinguishing characteristics of the administration of justice through the Courts, and cannot be allowed as among the privileges of an attorney.

2. SAME—SAME—POWER OF COURT TO PUNISH. The power of Courts to punish for contempt is not confined to the matters enumerated in Section 321 of the Civil Code. Courts possess the inherent power to punish for contempt all acts calculated to impede, embarrass or obstruct the administration of justice, which power is independent of statutory provision, and cannot be made to depend upon the legislative will.

3. SAME—SAME—PROTECTION OF SUITORS. The protection of the rights of litigants is of much higher and graver moment, and a much more imperative duty than punishment for an offense against the Court, or personal affront to the Judge.

4. SAME—PRACTICE IN CASE OF. When the respondent is fully apprised by the citation served upon him, of the matters concerning which he is required to answer, it is not necessary to propound interrogatories to to him; but the matter may be disposed of upon his response to the citation.

5. SAME—INTENT. The question of contempt does not depend upon intention, although where contempt was intended it will constitute an aggravating feature, which goes to the gravamen of the offense.

DAWSON, J.

I regret that the pleading which gave rise to the proceeding should have been filed; and especially that its paternity should be assumed and its propriety seriously defended by one so eminent in the legal profession, commanding both in his personal and professional life universal respect, as well for his learning and ability as for the propriety of his conduct. I had hoped that upon sober second thought the answer would be voluntarily withdrawn from the files, and that thus I might

be relieved of the duty of passing upon it—a duty as unpleasant as it is imperative. I have been unable, physically, to visit the library and examine the authorities thoroughly, as I should have been glad to do; but in the books furnished me by counsel, and others to which I have had access, I find no case precisely in point. I doubt if a parallel case can be found in the books, for the reason—to the credit of the profession—that in the history of our jurisprudence there has probably never been filed in any Court a pleading such as the one under consideration. It has long been the pride and boast of lawyers that the administration of justice in the Courts has been kept comparatively free from the debasing methods which sometimes appear in other departments of business life. If, however, the files of the Courts and the course of judicial proceedings are to become characterized by pleadings such as this, then that boast will have become simply a mocking reminiscence; and a style which, though tolerated, is yet condemned in the marketplace and on the hustings, will have usurped the place of that traditional dignity and purity which constitute the foundation of the respect in which the Courts have been held. The foundation being gone, respect must of necessity disappear, and the Courts of the country become a mere arena, in which the petty spites and private scandals of litigants will be paraded—where skeletons dragged from secret closets will be exhibited to the entertainment of the degraded and the disgust of the better element of society.

A single quotation from the answer will serve to illustrate the point. Among many other irrelevant, immaterial and scandalous statements therein, is the following:

"That he, the plaintiff, paid to the said Augusta in such settlement the sum of about $400,000, and the said Augusta Tabor, though tearfully protesting on the witness stand, or at least in open Court, that she wanted no divorce, and had been forced into it by the plaintiff herein, yet so far consented that the Court granted a divorce to the said Mrs. Augusta Tabor; and the said defendant at once proceeded to repeat with the said Doe a marriage ceremony which had already, and before the said divorce was granted, been repeated between them, and has ever since and now does claim this last named woman as his lawful wife."

If this language means anything it imputes to the plaintiff not only a gross violation of the civil law by coercing an unwilling wife to consent to a divorce, but also the crime of bigamy, by having procured to be repeated a marriage ceremony between himself and another woman while yet lawfully married. It goes further, and implies a grave charge against the Court which granted to that wife a divorce in the face of the fact that she "tearfully protested on the witness stand, or at least in open Court, that she wanted no divorce, and had been forced into it by the plaintiff herein," who was her husband.

When it is borne in mind that this answer was filed in a suit between the plaintiff and defendant, involving simply the question of mutual money demands, the total inapplicability of the language quoted cannot but be apparent, and its introduction in the answer, whatever the intention of the pleader, was not only gratuitous, but can serve no other end than to scandalize the plaintiff and tend to bring him and his cause into disrepute in the mind of the Court or jury before whom the issues are to be tried. There is very much more in the answer equally irrelevant, impertinent and offensive, and tending to the same end, much of which, it may be said, tends equally, or more strongly, to degrade the defendant by avowing his willing participation, for a consideration in money, in this and other disreputable and unlawful transactions. But this constitutes no palliation of, or excuse for, the introduction of such matter in the pleadings. That the Courts possess the power to protect suitors at their bar from such wanton attacks, I cannot doubt. The mere striking from the files can afford no adequate protection. It avails the patient nothing to extract the fangs of the viper after its poison has been injected into the blood. A pleading, like this answer, once upon the files, and which, as was the case in this instance, has found its way into the public press, has irrevocably done its work, and tends not only to scandalize the adverse party, but to obstruct the course of justice, and contaminate the purity of judicial proceedings. The introduction of such matter is in palpable violation and contempt of those well settled rules of decorum and propriety which constitute the chief distinguishing characteristics of the

administration of justice through the Courts. Such license cannot be allowed as among the privileges of an attorney. The privilege of an advocate in discussing the facts of a case as presented in the record, and the evidence delivered at the trial, is another and very different thing from the privilege of an attorney in stating in the pleadings the cause of action or grounds of defense of his client. In case of the advocate—the matters under consideration having been held by the Court to be relevant and proper—very large latitude is allowed. He may use any arguments, and draw any deductions, and indulge in any animadversions within the bounds of reason and decency, which he may deem proper to overthrow the cause of his adversary. But the attorney in the preparation of the pleadings is limited to a statement of such facts as are material to the issue; and is compelled to state these in an orderly and respectful manner—as our Code provides, "in ordinary and concise language."

I cannot accept as correct the position taken by respondent, that the powers of the Court in the matter of contempt are confined within the narrow limits embraced in section 321 of the Civil Code. *Stuart* v. *The People*, 3 Scam., 405, is cited in support of this position. The sentence relied on is as follows: "The right to punish for contempts committed in the presence of the Court is acknowledged by our statute; and while it affirms a principle that is inherent in all Courts of justice to defend itself when attacked, as the individual man has the right to do for his own preservation, it may also with great propriety be regarded as a limitation upon the power of the Courts to punish for any other contempts."

That it was not intended to hold the statutory provision as an absolute limitation upon the power of the Court, is manifest from the sentence immediately following the language quoted, viz.: "In this power would necessarily be included all acts calculated to impede, embarrass or obstruct the Court in the administration of justice. Such acts would be considered as done in the presence of the Court," and so punishable in spite of the letter of the statute. Moreover, the doctrine, if laid down as contended in this case, is not only contrary to the decided weight of authority, but has been expressly repudiated

by the same Court, which, in *Wilson* v. *The People*, 64 Ills., 195, holds that "the power to punish for contempt is incident to all Courts of justice, independent of statutory provisions." And this ruling is approved by the Supreme Court of this State in *Hughes* v. *The People*, 1 Colorado Law Reporter, 411. Mr. Justice Miller, of the Supreme Court of the United States, in *ex parte Cole*, 1 McCrary, 407, holds that "attorneys (being officers of the Court) are liable to be attached for contempt, and punished by fine and imprisonment for    *    *    * any act or misconduct    *    *    *    prejudicial to the administration of justice."

I regard the protection of the rights of litigants as of much higher and graver moment, and a more imperative duty, than the punishment of an offense against the Court or personal affront to the Judge.    And yet in this class of contempts it is recognized that "the right of self-preservation is an inherent right in the Courts.    It is not derived from the Legislature, and cannot be made to depend upon the legislative will." *In re Wolley*, 11 Bush, 95.

Nor do I regard interrogatories necessary under the facts here presented.    The objectionable matter is here set out in the petition upon which the citation issued, which petition is on file in the papers of the cause, and a substantial copy of which was served upon respondent with the citation.    So that he was fully advised of the matters concerning which he was required to answer, to wit:    "The writing and filing the said scandalous and irrelevant matters in said petition set forth." The citation might with propriety have gone farther, and included the publication of the answer in the newspapers, as well as the attaching thereto the names of other attorneys, in which event interrogatories might have been proper.    The publication of the answer was in itself alone clearly a contempt of Court, and if procured by respondent would have greatly aggravated his offense.    This he fully recognized, and hence, though not called upon so to do, he expressly disclaims under oath any connection with or responsibility for its publication.

I saw it stated, editorially, in the journal which published the answer, that the information which led to its publication was received from the defendant.    If such were the case, then

both the proprietors of the paper and the defendant might well have been included in the citation.

Respondent not only admits the writing and filing of the answer containing the matter set out in the petition and referred to in the citation, but justifies the act on the ground that "in his opinion there is nothing in said answer that is calculated to, designed to, or in any manner likely to prejudice the Court or the public against the plaintiff or the merits of this cause, or to embarrass this Court or any other Court in the due administration of justice herein, or to bring contempt upon or belittle the plaintiff," and that "he did not, at the time of making or filing the said answer, write or file the same with any intention on the part of the respondent to belittle the plaintiff, or any other person, in the mind of this Court or any other Court; that he had no intention by such answer, or by the allegations thereof, of bringing contempt upon the said plaintiff."

"The question of contempt does not depend on intention, although where the contempt was intended this is an aggravating feature, which goes to the gravamen of the offense." *Hughes* v. *The People, supra.*

With my view of the law, of the rights of litigants and the duty of Courts, as above indicated, I am constrained to hold the response insufficient, and that in the filing of said answer respondent was guilty of a flagrant contempt of the Court.

A fine of $500 will be imposed, together with the costs of this proceeding, and judgment will be entered accordingly.

*L. C. Rockwell* and *T. M. Patterson*, for plaintiff.

*Willard Teller, per se.*